UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/25/22

Jaquan Walters,

                Petitioner,

–v–

United States of America,

                Respondent.

15-cr-644 (AJN)
20-cv-10763 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

    On May 25, 2017, following a bench trial before the Court, Jaquan Walters was convicted of intentional killing in relation to a drug-trafficking offense and distribution of marijuana. On November 28, 2017, the Court concluded that the murder was premeditated and sentenced Mr. Walters to 300 months' imprisonment. Defendant now brings a motion to vacate his sentence pursuant to 28 U.S.C. § 2255 due to alleged ineffective assistance of counsel. For the reasons that follow, the motion is DENIED.

I.    BACKGROUND

    A.  Factual Summary

    On August 26, 2015, Mr. Walters sold Lamar Moorer a small bag of marijuana, with the expectation that Mr. Moorer would pay him $10. Dkt. No. 117 at 1. When Mr. Moorer failed to pay, a fistfight ensued. *Id.* Mr. Walters left the scene of the fight on a bicycle and retrieved a handgun at an apartment complex a quarter mile away. *Id.* at 4. He then returned to where Mr. Moorer was walking on the sidewalk, a trip that took about six minutes. *Id.* Mr. Walters shot Mr. Moorer several times, the last of which was at near point-blank range, and then shot him again while he was lying on the ground. Dkt. No. 134 at 2. Mr. Walters calmly walked away from the

scene and bicycled away. Trial Transcript (Tr.) at 482. Mr. Moorer died shortly thereafter. Dkt. No. 134 at 4.

On September 21, 2015, Mr. Walters was indicted for intentional killing in relation to a drug-trafficking offense under 18 U.S.C. 924(j)(1) and 2, and distribution of marijuana under 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(D), and 18 U.S.C. § 2. Dkt. No. 1. The parties stipulated to the facts necessary to establish all elements of the charged offenses except for Mr. Walters' *mens rea* with respect to the killing. Dkt. No. 117 at 1. Therefore, the only issue before the Court during the bench trial was whether Mr. Walters acted with malice in killing Mr. Moorer. In advance of the trial, Petitioner's trial counsel hired Dr. Jessica Pearson, a forensic psychologist, and Ms. Lisa Orloff, a social worker, to interview and evaluate Mr. Walters. Dkt. No. 117 at 5; Dkt. No. 118 at 1.

After two meetings with Mr. Walters lasting approximately five hours total, Dr. Pearson prepared a report assessing Mr. Walters' "current psychological functioning" and "any mitigating factors related to his mental state at the time of the instant offense." Defense Exhibit (DX) E4 at 1. Dr. Pearson opined in her report that Mr. Walters met the criteria for post-traumatic stress disorder ("PTSD"). *Id.* at 10-13. She explained that in the "year or so leading up to the instant offense" Mr. Walters suffered from symptoms of PTSD and "[t]his was likely his baseline emotional state when he was confronted by Mr. Moorer on the day of the instant offense." *Id.* at 13. In an addendum to her report, Dr. Pearson opined that in her clinical opinion "during the events of the instant offense, Mr. Walters was experiencing extreme but reasonable fear; his extreme but reasonable fear was based on personal historical factors and the situational factors present at the time of the instant offense." DX E5 at 1. Further, "Mr. Walters' history of PTSD in combination with the situational factors present during the altercation with Mr. Moorer

2

contributed to Mr. Walters' perception that he was at risk for severe injury or death at the hands of Mr. Moorer." *Id.* at 1-2.

Ms. Orloff, the social worker, also met with Mr. Walters on at least two occasions. Dkt. No. 117 at 19-20. In these meetings, Mr. Walters described his emotional state around the time of the shooting, explaining that "[i]t was like an out of body experience" and he "felt like [he] was in a trance." *Id.*

At trial, Dr. Pearson testified consistent with her report and addendum, but the Court ultimately found the Government's forensic psychologist, Dr. Cheryl Paradis, "far more persuasive" on the question of Mr. Walters' state of mind at the time of the killing. Tr. at 476-77. Dr. Paradis determined that Mr. Walters did not suffer from PTSD because he failed to meet "one of the cardinal symptoms of PTSD," namely, defensive avoidance. Tr. at 101. Dr. Paradis further opined that at the time of the killing, Mr. Walters had the ability for "rational thought," "decision-making," and could understand the consequences of his actions. Tr. at 135-36. The Court concluded that Dr. Paradis' analysis was more "thorough, probing, and pertinent" than Dr. Pearson's, Tr. at 477, and questioned why Dr. Pearson did not ask Mr. Walters what was in his "heart and mind" at the time of the shooting, Tr. at 446-47.

On May 25, 2017, Mr. Walters was found guilty on both counts after a four-day bench trial, where the Court concluded beyond a reasonable doubt that Mr. Walters had acted with malice in the killing of Mr. Moorer. In addition to Dr. Paradis' credible testimony, the Court's finding of malice was based upon: (1) video evidence showing that "Mr. Walters was frequently the instigator or aggressor during the [initial] fight" with Mr. Moorer; (2) Mr. Walters' "aggressiveness and insistence on continuing [to] fight" Mr. Moorer; (3) Mr. Walters "chose to return" to the scene of the fight in order to kill Mr. Moorer; (4) after returning to the scene, he

"immediately and without provocation" shot Mr. Moorer "execution style, firing at least five shots at nearly point-blank range"; (5) the "post-arrest statements [that] paint the portrait of a rational and arguably calculating man"; (6) his attempt to conceal the killing by hiding his bicycle and gun after the shooting; and (7) his calm demeanor after the shooting where an eyewitness described him "walk[ing] away" with "no remorse." Tr. at 480-83. The Court noted that it was "inclined" to find, based on the above facts, that the murder was also premeditated, but allowed the parties the opportunity to address that issue at sentencing. *Id*. at 485. In advance of sentencing, trial counsel submitted a memorandum to the Court where she argued, based on concessions from Dr. Paradis' testimony during trial, that Mr. Walters did not act with premeditation. Dkt. No. 93. The Government also submitted post-trial briefing relying on Dr. Paradis' trial testimony. Dkt. No. 97.

At the sentencing on November 28, 2017, the Court determined that the murder was premeditated based on the same factors that supported the finding of malice. Dkt. No. 103 at 15-18. The Court ultimately sentenced Mr. Walters to 300 months' imprisonment, which was a downward variance of 24 months from the Guidelines range. *See id.* at 20. The Court recognized that Mr. Walters grew up under exceptionally challenging circumstances, had minimal criminal history, was genuinely remorseful for the killing, and had already made sincere efforts towards rehabilitation during his time in prison. *Id.* at 47-49. However, the Court determined that the "callus [sic] . . . , deliberate, execution-style murder" was "truly horrific" and that the "law [ ] must speak clearly and loudly" to strongly condemn the act, provide just punishment, deter Mr. Walters and others from such violent offenses, and protect the public. *Id.* at 46-48.

Walters appealed his conviction. The Second Circuit affirmed the Court's judgment, concluding that the evidence was "more than" sufficient to prove malice aforethought beyond a

reasonable doubt. *See United States v. Walters*, 775 Fed. App'x 25, 28 (2d Cir. 2019), *cert. denied* 140 S. Ct. 668 (2019). On December 16, 2020, Mr. Walters timely filed this counseled petition to vacate his sentence pursuant to 28 U.S.C. § 2255 due to alleged ineffective assistance of counsel. On October 18, 2021, the Government submitted its opposition and on November 17, 2021, Petitioner submitted his counseled reply. Dkt. Nos. 134, 135.

## II. LEGAL STANDARD

A petitioner seeking to attack his sentence based on ineffective assistance of counsel must: (1) show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms," and (2) "affirmatively prove prejudice," namely, demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 693–94 (1984). When analyzing a claim that counsel's performance did not meet constitutional standards, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* "In assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 690). Constitutionally inadequate performance may be established if a habeas petitioner "shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Id*. Nonetheless, "[t]he failure to include a meritless argument does not fall outside the wide range of professionally competent assistance" to which a petitioner is entitled. *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (quotation marks and citations omitted).

This case concerns alleged deficiencies in expert witness preparation and testimony. Typically encompassed within the ambit of trial counsel's strategic discretion is "whether to call any witnesses on behalf of the defendant, and if so which witnesses to call." *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987); *see United States v. Eyman*, 313 F.3d 741, 743 (2d Cir. 2002) ("A failure to call a witness for tactical reasons of trial strategy does not satisfy the standard for ineffective assistance of counsel."). So too "[d]ecisions whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature." *United States v. Eisen*, 974 F.2d 246, 265 (2d Cir. 1992) (quotation marks and citation omitted); *see Ogundipe v. United States*, No. CV-97-2828, 1997 WL 470371, at *1 (E.D.N.Y. July 2, 1997) ("Counsel's decisions regarding the calling of witnesses and the extent to which witnesses are to be cross-examined should not be second-guessed and do not, as a general rule, provide a basis for an ineffective assistance claim."). How to cross-examine an expert witness and whether to obtain one's own expert are "paradigmatic" strategic choices traditionally reserved to trial counsel. *Hinton v. Alabama*, 571 U.S. 263, 274–75 (2014) (per curiam) (cautioning that courts on collateral review should not "launch . . . into examination of the relative qualifications of experts hired and experts that might have been hired").

Even if an attorney's performance was objectively unreasonable, a habeas petitioner must also demonstrate prejudice. *See Strickland*, 466 U.S. at 687. To do so, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In assessing prejudice, courts review the record to determine the impact of the alleged ineffectiveness within the context of the entire trial. *See Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010) ("In assessing prejudice, courts 'must

consider the totality of the evidence before the judge or jury.'") (quoting *Strickland*, 466 U.S. at 695). In other words, the question is whether there is "a reasonable probability that the result of petitioner's sentencing would have been different" absent trial counsel's alleged errors. *Goodrich v. Smith*, 643 F. Supp. 579, 583 (N.D.N.Y. 1986).

### III. DISCUSSION

In his petition, Mr. Walters argues that absent trial counsel's deficiencies, he "would not have been found to have acted with premeditation, and therefore to have committed first-degree murder." Dkt. No. 117 at 16. Had the Court found that he had only committed second-degree murder "in the absence of premeditation," he argues, his sentence would have been subject to a lower Sentencing Guidelines range than the 300-month sentence he received. *Id.* at 2. Petitioner's requested relief is to be resentenced after an opportunity to "present expert testimony relevant to premeditation." *Id.* Petitioner does not seek to vacate his trial or disturb the Court's finding of malice. *See* Dkt. No. 135 at 10 (only requesting relief as to his sentence).

Mr. Walters advances two ways that trial counsel allegedly deprived him of the opportunity to present to the Court credible expert evidence of his state of mind at the time of the killing. First, trial counsel allegedly failed "to ensure that the expert tasked with opining on the *only* issue in the case actually under[took] the investigation necessary to offer an opinion on that question." Dkt. No. 135 at 4. Second, Petitioner's counsel was allegedly ineffective because "after this Court made clear that the defense expert had failed to provide useful testimony on this key issue, counsel did not seek to offer additional, pertinent expert testimony based on further examination of [Petitioner] at or in advance of sentencing." Dkt. No. 117 at 24-25.

The Court first considers whether these arguments establish that trial counsel's performance was objectively unreasonable.

### A. Performance

### 1. Alleged Failures to Prepare the Expert Witness

Petitioner first alleges that trial counsel failed to properly prepare her expert witness, Dr. Pearson. As an initial point, Petitioner appears to contend that Dr. Pearson failed to opine at all on Petitioner's state of mind at the time of the offense. *See* Dkt. No. 117 at 16 ("Trial counsel failed to ensure that the defense expert opined on defendant's *mens rea* at the time of the offense."); *see also* Dkt. No. 135 at 3. But a review of the trial record and Petitioner's own brief shows that Dr. Pearson did in fact opine on Petitioner's state of mind both in the addendum to her expert report and at trial.[1] *See* Dkt. No. 117 at 17 (citing to Dr. Pearson's addendum and the trial transcript for Dr. Pearson's opinion "that Mr. Walters 'was experiencing extreme but reasonable fear' at the time of the shooting"). Thus, the "core claim" of Petitioner's argument is not that Dr. Pearson failed to provide any testimony as to Mr. Walters' state of mind at the time of the offense, but rather that "trial counsel offered constitutionally defective representation by failing to ensure that an expert probed his *mens rea* at the time of the offense," and any opinion offered was necessarily deficient. Dkt. No. 135 at 3. In particular, Petitioner argues that counsel "seemingly failed to relay to the defense expert statements made by [Petitioner] that were plainly relevant to the question of premeditation." Dkt. No. 117 at 24–25. More specifically, counsel allegedly "failed to ensure that Dr. Pearson considered or evaluated the pertinent evidence that

---

[1] Petitioner also faults trial counsel for "expressly disaffirm[ing] any intent to ask Dr. Pearson 'to testify what [Mr. Walters'] state of mind actually was'" at the time of the killing during a pre-trial conference. Dkt. No. 117 at 8 (citing Dkt. No. 114 at 11-12). Again, Dr. Pearson ultimately *did* opine on this issue at trial. Furthermore, to the extent that Petitioner argues that this pre-trial concession was ineffective assistance, trial counsel's position was a reasonable interpretation of Federal Rule of Evidence 704(b). "It is well established that Rule 704(b) 'disables even an expert from expressly stating the final conclusion or inference as to a defendant's actual mental state at the time of a crime.'" *United States v. Haynes*, 729 F.3d 178, 196 (2d Cir. 2013) (quoting *United States v. DiDomenico*, 985 F.2d 1159, 1164 (2d Cir. 1993)). "Mere disagreement" with a strategic concession, like this one, is insufficient to constitute ineffective assistance of counsel. *United States v. Spigelman*, No. 5-cr-960 (SAS), 2008 WL 84539, at *2 (S.D.N.Y. Jan. 8, 2008).

[Ms. Orloff's] notes contained—namely, that Mr. Walters had conveyed to members of the defense team that he was 'in a trance' and 're-experiencing' past experiences during the shooting."[2] Dkt. No. 135 at 6. In sum, counsel "failed to ensure the defense expert investigated [his] state of mind at the time of the shooting." Dkt. No. 117 at 24. These alleged failures to prepare the expert witness allegedly deprived Mr. Walters of "*credible* testimony on this issue." Dkt. No. 117 at 24 (emphasis added); *id.* at 17 (arguing that Dr. Pearson's ultimate opinion "was not supported by her analysis").

Petitioner cites no Second Circuit authority to support that counsel's performance falls below the objective standard of reasonableness when counsel fails to prepare or superintend an expert witness in such a manner. Assuming that such a duty exists outside this circuit, it appears confined to capital cases. *See Hovey v. Ayers*, 458 F.3d 892, 925 (9th Cir. 2006) ("A defense attorney in the sentencing phase of a capital trial has 'a professional responsibility to investigate and bring to the attention of mental health experts who are examining his client[ ] facts that the experts do not request.'" (quoting *Wallace v. Stewart*, 184 F.3d 1112, 1116 (9th Cir. 1999))). While courts "must be especially cautious in protecting a defendant's right to effective counsel at a capital sentencing hearing," this heightened standard is inapplicable to the case at bar. *Cox v. Ayers*, 613 F.3d 883, 897 (9th Cir. 2010) ("The bar for establishing prejudice is set lower in death-penalty sentencing cases than in guilt-phase challenges and noncapital cases.").

Here, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Petitioner cites another capital case from the Tenth Circuit, *Wilson v. Sirmons*, for the proposition that "counsel

---

[2] The parties dispute whether trial counsel gave Ms. Orloff's notes to Dr. Pearson. *See* Dkt. No. 134 at 15–16. The Court need not resolve any factual dispute between the parties because even assuming, *arguendo*, that Petitioner's allegations are true, trial counsel's performance did not fall below an objective standard of reasonableness.

9

may not simply hire an expert and then abandon all further responsibility." 536 F.3d 1064, 1089 (10th Cir. 2008). Yet, even in the capital setting, the *Wilson* court explained that "in many situations, the expert will know better than counsel what evidence is pertinent to mental health diagnoses and will be more equipped to determine what avenues of investigation are likely to result in fruitful information." *Id.* Accordingly, "[t]o a degree, counsel should be able to rely on that expert to determine what evidence is necessary to an effective evaluation, and what additional evidence the expert needs to complete testing." *Id.* Significantly, in *Wilson*, counsel's failure foreclosed the expert's access to the "only people" with potentially crucial mitigating information for the sentencing hearing. *Id.* at 1088. By contrast here, Petitioner does not allege that his trial counsel's alleged missteps limited Dr. Pearson's access to Petitioner or other pertinent information. Dr. Pearson was free to question Petitioner and the record reflects that she did so at two meetings lasting approximately five hours total. Dkt. No. 117 at 6. Therefore, the Court concludes that trial counsel's reliance on Dr. Pearson's investigation and evaluation was reasonable.

      The conclusion that this reliance was reasonable is further supported by the fact that Petitioner does not argue that Dr. Pearson *herself* was incompetent. Absent such an argument, the Court will presume that Dr. Pearson was capable of performing the work she was hired to do. *See Lundgren v. Mitchell*, 440 F.3d 754, 772 (6th Cir. 2006) ("A licensed practitioner is generally held to be competent, unless counsel has good reason to believe to the contrary."). By contrast, unreasonable reliance was found in a capital case where counsel had "serious and well-founded doubts" about the expert, concluded he was a "quack," but continued to rely on him. *Stevens v. McBride*, 489 F.3d 883, 888 (7th Cir. 2007); *see, e.g.*, *Skaggs v. Parker*, 235 F.3d 261, 269 (6th Cir. 2000) (concluding, in a capital case, that counsel's reliance during the penalty

10

phase was unreasonable after that expert's "bizarre and eccentric testimony" during the guilt phase).

Here, counsel's prerogative to manage her expert is the type of strategic decision that the Court will not second-guess. Counsel's alleged failure to more exactingly prepare or supervise an otherwise competent expert "does not fall outside the wide range of professionally competent assistance to which Petitioner was entitled." *Aparicio*, 269 F.3d at 99 (quotation marks and citations omitted).

### 2. Alleged Failure to Offer Additional Expert Testimony

Petitioner additionally argues that his counsel was ineffective because "after this Court made clear that the defense expert had failed to provide useful testimony on this key issue, counsel did not seek to offer additional, pertinent expert testimony based on further examination of [Petitioner] at or in advance of sentencing." Dkt. No. 117 at 24–25. In other words, Petitioner faults his counsel for not taking advantage of the Court's decision to reserve its determination of premeditation. Though Petitioner may disagree with how trial counsel approached this decision, "[m]ere disagreement with an attorney's strategy is not enough for a defendant to prevail on an ineffective assistance claim." *Spigelman*, 2008 WL 84539, at *2; *see United States v. Sanchez*, 790 F.2d 245, 253 (2d Cir. 1986) ("A defendant, of course, may not claim ineffective assistance of counsel merely because in hindsight he thinks counsel's trial strategy was inadequate.")

Petitioner characterizes trial counsel's chosen strategy, to rely on concessions from the Government's expert before and at sentencing as opposed to submitting additional expert witness testimony, as "unusual." Dkt. No. 117 at 25. But, as the Supreme Court has cautioned, "*Strickland* does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense." *Harrington v. Richter*,

562 U.S. 86, 111 (2011). Likewise, the Second Circuit has "stopped short of suggest[ing] a *per se* requirement of expert testimony" even in sensitive areas such as child sexual abuse cases. *Morency v. Annucci*, No. 14-CV-672 (DLI) (ST), 2017 WL 4417718, at *14 (E.D.N.Y. Mar. 20, 2017), *report and recommendation adopted*, 14-CV-672 (DLI) (ST), 2017 WL 4417647 (E.D.N.Y. Sept. 30, 2017). As *Harrington* explained, "[i]n many instances cross-examination will be sufficient" particularly when trial counsel's "overall performance indicates active and capable advocacy." 562 U.S. at 111. Therefore, rather than being "unusual," a decision to rely on the evidence elicited during cross-examination can be a valid tactical decision. "[W]hether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation." *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000) (quotation marks and citations omitted).

In arguing that trial counsel's decision not to call an additional expert was unfounded in this case, Petitioner cites *Eze v. Senkowski*, 321 F.3d 110 (2d Cir. 2003). *See* Dkt. No. 135 at 6–7. But, in *Eze*, there was no indication that counsel even *consulted* an expert before trial. Further, that counsel did not question the basis for the government expert's conclusions during cross-examination. Those failures combined with the heightened sensitivity the Second Circuit recognizes in the context of child sexual abuse cases explain why a failure to call an expert witness to testify could amount to ineffective assistance of counsel. *Eze* is therefore readily distinguishable on its extraordinary facts. *See United States v. Melhuish*, 6 F.4th 380, 398 (2d Cir. 2021) (noting that lack of expert testimony can constitute ineffective assistance only "in some unusual contexts"). The Court follows caselaw that has declined to extend *Eze* beyond those facts. *See, e.g.*, *Morency*, 2017 WL 4417718, at *13-14. Thus, this case "more properly

12

falls within the general class of cases recognized in *Harrington* where cross-examination of the People's expert alone could be a viable, and thus constitutionally effective, strategic choice." *Id.*

This Court observed trial counsel's active and capable cross-examination of the Government's expert at trial. *See, e.g.*, *Scott v. Racette*, No. 1:15-cv-00043-MAT, 2018 WL 451825, at *8 (W.D.N.Y. Jan. 17, 2018) (denying an ineffective assistance of counsel claim when "defense counsel executed a vigorous and effective cross-examination of the prosecution's . . . experts"); *Cruz v. Griffin*, No. 16 Civ. 8998 (CS)(JCM,) 2019 WL 6220806, at *13 (S.D.N.Y. Oct. 24, 2019), *report and recommendation adopted*, No. 16-cv-8998(CS)(JCM), 2019 WL 6211262 (S.D.N.Y. Nov. 20, 2019) (explaining that a petitioner "cannot prevail on a claim of ineffective assistance merely . . . because the cross–examinations were arguably ineffective"). Here, reliance on these cross-examination concessions in a timely post-trial brief before sentencing does not fall below "an objective standard of reasonableness" under "prevailing professional norms." *Strickland*, 466 U.S. at 688.

In sum, none of Petitioner's arguments demonstrate that trial counsel's performance was unreasonable under the first prong of *Strickland*.

### B. Prejudice

Even assuming Petitioner could meet the first prong of *Strickland*, he fails to demonstrate prejudice. *Bennett v. United States*, 663 F.3d 71, 85 (2d Cir. 2011) (explaining that ineffective assistance of counsel claims under *Strickland* "must be rejected if the defendant fails to meet either the performance prong or the prejudice prong"). To prevail under the second prong, Petitioner must show with reasonable probability that "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Petitioner's theory is that had trial counsel better prepared the existing expert or offered additional expert testimony, there is a reasonable

probability that Court would not have concluded that Petitioner acted with premeditation. *See Waiters v. Lee*, 857 F.3d 466, 469 (2d Cir. 2017) (explaining that "the likelihood of a different result in the absence of the alleged deficiencies in representation 'must be substantial, not just conceivable'" (quoting *Harrington*, 562 U.S. at 112)).

In evaluating prejudice, the Court looks at the "totality of the evidence" in front of the factfinder. *Berghuis*, 560 U.S. at 389. For example, in *Waiters v. Lee*, the Second Circuit found that trial counsel's decision not to retain a medical expert on intoxication did not prejudice the defendant when such testimony would have been "overshadowed" by "specific testimonial evidence of [defendant's] ability to carry out purposeful acts prior to, and during, the incident." 857 F.3d at 482. When, "[c]ollectively" other actions "tend strongly to demonstrate that [the defendant] retained the ability to identify a conscious purpose and to act on that purpose" then the omitted expert testimony would likely not "have made a difference" in the trial. *Id.* at 481–82. The Second Circuit concluded that since the absence of expert testimony would not have "so clearly altered the entire evidentiary picture," petitioner failed to prove prejudice and thus the district court erred in granting Waiters' habeas petition. *Id.* at 484 (cleaned up); *see also Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) ("Even serious errors by counsel do not warrant granting habeas relief where the conviction is supported by overwhelming evidence of guilt.").

Here, at sentencing, the Government was only required to prove premeditation by a preponderance of the evidence, not beyond a reasonable doubt. *See United States v. Vaughn*, 430 F.3d 518, 525 (2d Cir. 2005). There is not a substantial likelihood that superior expert testimony would have altered the Court's finding of premeditation. There was more than sufficient evidence to find the killing was premeditated by a preponderance of the evidence. At sentencing,

the Court articulated a number of specific facts from the record that supported this finding. This included: 1) the length of time between the initial fight and the killing; 2) that Petitioner left the scene, 3) retrieved a hidden firearm; 4) returned to the scene; 5) fired at least five shots at point-blank range; 6) including two shots after the victim was struggling on the ground. Sent. Tr. 16-17. Given these numerous factors, Petitioner cannot show with a reasonable probability that additional or more credible expert testimony would have negated that finding of premeditation. Other facts on the record would have "overshadowed" even credible expert testimony. *Waiters*, 857 F.3d at 482. Ultimately, Petitioner cannot overcome the weight of the evidence on the record coupled with the relevant burden of proof, and he thus cannot meet second prong of the *Strickland* standard. *Strickland*, 466 U.S. at 694.

## IV.   CONCLUSION

For the reasons provided, the Court DENIES the motion to vacate under 28 U.S.C. § 2255.

No evidentiary hearing is necessary because the files and records of the case conclusively show that Petitioner is not entitled to relief. 28 U.S.C. § 2255(b); *see Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009). Because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253. Additionally, this Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, so in forma pauperis status is denied. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

This resolves docket number 116. The Clerk of Court is respectfully ordered to close Case No. 20-cv-10763.

SO ORDERED.

Dated: March 25, 2022
       New York, New York

_____
ALISON J. NATHAN
United States District Judge